**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **ROGER FOY JENKINS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:10-0838** |
| | ) | |
| **DAVID A. BERKEBILE, Warden,** | ) | |
| **FCI Beckley.** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 17, 2010, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2243.[1] (Document No. 1.) On June 24, 2010, Petitioner filed an Application to Proceed Without Prepayment of Fees and Costs. (Document No. 4.) On July 21, 2010, Petitioner filed a Request for Immediate Release on Default Judgment. (Document No. 5.) Having examined these documents, the undersigned finds that the alleged circumstances clearly do not indicate that Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The undersigned therefore respectfully recommends that Petitioner's Application to Proceed Without Prepayment of Fees and Costs (Document No. 4.) be denied, his Request for Immediate Release on Default Judgment (Document No. 5.) be denied, his Petition (Document No. 1.) be dismissed and this matter be removed from the docket of this Court.

**PETITIONER'S ALLEGATIONS**

Petitioner states that he completed the Bureau of Prisons' Residential Drug Abuse Program

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[RDAP] on April 9, 2009, and qualified for the one year reduction of his sentence under 18 U.S.C. § 3621(e).[2] Plaintiff indicates that thereafter, as he was in a "private-for-profit" halfway house in Oklahoma City and just about to be released from custody, he was drug tested. Plaintiff states that the person who administered the drug test did not follow the standard testing procedure as "on this occasion, tester . . . wore no gloves, and used open, unsealed containers, rather than opening a sealed plastic bag with the test components, as is procedure." Apparently, the drug test indicated that Petitioner had used drugs. Petitioner states that he requested a second drug test to prove that the results of the first were incorrect and a second drug test was administered. Petitioner indicates that, against Bureau of Prison policies, the disciplinary committee at the halfway house refused to give him a copy of the results of the second drug test, did not hold a formal disciplinary hearing, did not hear his witnesses or consider "the evidence proving innocence and did not give him a copy of its decision." Petitioner "swears under penalty of perjury, that he has had no association with drugs or their use in over six years, and that his witnesses and the evidence proving innocence, were not allowed, in violation of due process of law and Bureau of Prisons own policy, rendering the decision to impose sanctions and rob him of his liberty interest, invalid and unconstitutional, demanding reversal." Petitioner attaches a copy of the Center Disciplinary Committee [CDC] Report indicating

[2] The RDAP program consists basically of two phases: (1) the residential phase during which the qualifying inmate is housed in a separate unit for six to twelve months and participates in a 500 hour treatment program with individual and group activities, study and counseling and (2) the transitional phase after the residential phase which can include an institution phase during which the inmate is in general population and participates in a one hour per month treatment program for twelve months or until release and/or a community phase for up to six months in a Community Corrections Center (CCC) or on home confinement.

that an Incident Report dated May 7, 2010, charged Petitioner with violating Code 112[3] on April 29, 2010. The Report indicates that Petitioner was given a copy of the Incident Report and Petitioner was advised of his rights before the CDC on May 7 and the CDC hearing was held on May 11, 2010. The Report further indicates that Petitioner denied committing the Code 112 violation and, based upon Petitioner's drug test lab results, the CDC found that he committed the violation as charged.[4] The CDC recommended Petitioner's "immediate termination from the program, and max loss of credited time earned from the R-DAP program or Good Time which ever is greater." The Report indicates that Petitioner was advised of the CDC's findings, decision and recommendation and his right to appeal and a copy of the Report was given to him. There is no indication in the record that Petitioner appealed the CDC's findings and recommendation.

## DISCUSSION

### A. Petitioner's Claims Respecting the Disciplinary Hearing Process and Release for Completion of RDAP.

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process

[3] 28 C.F.R. 541.13, Table 3, indicates that a Code 112 violation ("[u]se of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff" is among the "Greatest Severity Prohibited Acts."

[4] The CDC also considered the statements of two inmates but concluded that the inmates "were not present for the UA nor can they say [that] he did not use the drugs. They only say that they did not see him use drugs."

of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectible right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits

without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

18 U.S.C. § 3621(b), authorizes the BOP to implement drug abuse treatment programs for its prisoners: "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." To

effectuate this mandate, the BOP is required to ensure that all eligible prisoners "with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment . . . [and the BOP shall] provide residential substance abuse treatment." 18 U.S.C. § 3621(e)(1). As an incentive for successful completion of RDAP, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B)(Emphasis added.). Whether to grant early release is in the discretion of the Bureau of Prisons. See Lopez v. Davis, 531 U.S. 230, 240, 121 S.Ct. 714, 721, 148 L.Ed.2d 635 (2001)(affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program.").[5] Thus, as to substance

---

[5] 18 U.S.C. § 3621(e)(2) provides as follows:

> **(2) Incentive for prisoners' successful completion of treatment program. –**
> **(A) Generally. –** Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.
> **(B) Period of custody. –** The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

abuse treatment programs, the BOP has broad discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under § 3621(e). Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).[6]

Petitioner asserts essentially that he had a liberty interest in a one-year sentence reduction of his sentence for completing RDAP, and was entitled to due process in the disciplinary proceedings which resulted in his loss of the one-year reduction. Petitioner asserts that his due process rights were violated indicating that his drug test was improperly administered and the CDC did not hold a formal disciplinary hearing, hear his witnesses, consider evidence proving innocence and give him a copy of its decision. Petitioner's claims are without merit. Legally, Petitioner had

---

[6] Consistent with the broad discretion allotted to the BOP, the BOP promulgated 28 C.F.R. § 550.56(d)(2) which provided that an inmate may be expelled from RDAP if he is found to have used or possessed drugs or committed a 100 level prohibited act. The BOP also issued Program Statement 5330.10 stating at Chapter 6, Section 5, as follows respecting loss of provisional early release:

> An inmate may lose his or her provisional early release at any time for failure to successfully complete all components of the drug treatment program (including transitional services), or for committing certain prohibited acts. Inmates are to be advised that they may use the administrative remedy procedure to appeal decisions regarding early release.

no liberty interest in early release for completing RDAP under 18 U.S.C. § 3621(e) as discussed above. Additionally, considering the facts as they appear in the record, it is clear that Petitioner completed the residential phase of RDAP and was participating in the transitional phase when he was charged with and found guilty of violating Code 112. He had therefore not completed RDAP and had not qualified for the Section 3621(e)(2) one-year reduction of his sentence. As he was in RDAP's transitional phase, a one-year reduction of his sentence was conditional upon his completing the transitional phase successfully. He did not do so. The BOP retained authority in its discretion to deny Petitioner early release. Because his entitlement to early release was conditional and not mandatory, Petitioner's further custody as a disciplinary sanction cannot be said to have impacted the duration of Petitioner's sentence. The undersigned further finds no indication in the record that the BOP failed to follow its own procedures in considering the charge that Petitioner used drugs while he was in RDAP's transitional phase. Contrary to Petitioner's assertions, the CDC's Report indicates that a hearing was held on May 11, 2010, Petitioner was present, evidence and statements of witnesses were considered and Plaintiff was advised of the CDC's decision. The proceedings conformed to the requirements of Wolff v. McDonnell and applicable BOP regulations. Petitioner is therefore not in custody in violation of the Constitution or laws of the United States, and his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2243 (Document No. 1.) must be dismissed.

**B. Petitioner's Request for Immediate Release on Default Judgment.**

By his Request for Immediate Release on Default Judgment (Document No. 5.), Petitioner asserts that pursuant to under 28 U.S.C. § 2243, Respondent had three days to respond to his Petition or show good cause for an extension of that period of time for up to twenty days. Petitioner contends

that Respondent has failed to respond to his Petition or show good cause for and extension and therefore the Court must award the writ. 28 U.S.C. § 2243 provides as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted unless it appears from the application that the applicant or person detained is not entitled thereto.
>
> The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.
>
> The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.
>
> When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.
>
> Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.
>
> The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.
>
> The return and all suggestions made against it may be amended, by leave of court, before or after being filed.
>
> The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.

Petitioner's Request for Immediate Release on Default Judgment must be denied because it does not appear from his Petition that Petitioner is entitled to the granting of a writ or the issuance of an order directing Respondent to show cause why the writ should not be granted. Additionally, the Court notes that Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts[7] giving District Courts discretion in Section 2241 cases to fix time limits within which

---

[7] Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides as follows: "The clerk must promptly forward the petition to a judge under the Court's assignment procedure, and the judge must examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. In every case, the clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state

respondents must respond to petitions for writs of habeas corpus has been held to prevail over 28 U.S.C. § 2243. Wyant v. Edwards, 952 F.Supp. 348, 350 (S.D.W.Va. 1997).

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's Application to Proceed Without Prepayment of Fees and Costs (Document No. 4.), **DENY** his Request for Immediate Release on Default Judgment (Document No. 5.), **DISMISS** his Petition (Document No. 1.) and remove this matter be removed from the docket of this Court.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

---

involved."

Wright v. Collins, 766 F.2d 841,846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91,94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

Date: October 29, 2010.

R. Clarke VanDervort
United States Magistrate Judge